UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEPHEN BROOKS,

            **Plaintiff**

    v.                                Case No. 1:09-cv-256-HJW

GARY DENT, et al.,

            **Defendants**

## ORDER

This matter is before the Court upon the defendants' "Motion for Summary Judgment" (doc. no. 24), which plaintiff opposes. Defendants have filed "Proposed Findings of Fact and Conclusions of Law" (doc. no. 25), which plaintiff has highlighted as true, false, or irrelevant (doc. no. 34, disputing the facts in ¶¶ 29-35, 37, 39-40, 42-44, 57-58, 60-67, 69, 71, and 75).[1] Having carefully considered the record, including the pleadings, briefs, and exhibits, the Court will <u>deny</u> the defendants' motion, with one exception, for the following reasons:

**I. Background and Factual Allegations**

On March 14, 1995, Plaintiff Stephen Brooks was hired by the University of Cincinnati ("UC") as a "Senior Employee and Labor Relations Specialist" (Brooks Dep. 13 and Ex. 1). Brooks had extensive experience in Human Resources ("HR") and educational credentials, including a Masters and J.D. degree (Brooks Dep. at 10-12). In January of 1998, he was promoted to "Director of Classification and

---

[1] Although the Court's Scheduling Order requires only the movant to file Proposed Findings of Fact and Conclusions of Law, plaintiff has also filed his own version of Proposed Findings of Fact and Conclusions of Law (doc. no. 33).

Compensation" (Brooks Dep. 23 and Ex. 6). When his supervisor resigned in 2000, Brooks served in that position on an interim basis (Brooks Dep. at 31-32 and Ex. 8) and reported to Tom Guerin, Interim Chief HR Officer (Guerin Dep. 11; Brooks Dep. 31-32 and Ex. 8). After approximately one year, Brooks resumed as "Director of Classification and Compensation" (Guerin Dep. 12).

With respect to his job performance, plaintiff points out that his supervisor had consistently given him "good to outstanding" performance reviews (Guerin Dep. at 27 and Ex. 3), that he had received all available merit salary increases during his ten years at UC, and that his department received a significant award in 2002.

In 2003, UC began developing a new system ("UC Flex") with IBM and other consultants to use software to manage UC's financial information and HR functions. In 2004, Chris Diersing, UC's Director of HR Information Systems, was named team leader for implementation of UC Flex for HR functions by Guerin and Jim Tucker, Associate Vice President ("VP") of Administration and Business Services (Diersing Dep. 15). Brooks selected Jan Leikauf to be the Compensation Unit's liaison for the project (Brooks Dep. 93; Diersing Dep. 14).

Brooks briefly retired on June 21, 2004, but UC rehired him on September 6, 2004, in the same position (Brooks Dep. 41-42, Exs. 11, 13; Guerin Dep. 14). He initially worked a four-day schedule, but soon resumed a full-time schedule and pay (Brooks Dep. at 46). Brooks was part of the unclassified service and served at the pleasure of UC's Board of Trustees (Id. at 34-35, 262).

The new UC Flex program for HR and payroll functions was "unveiled" in June

2006 (Diersing Dep. 14; Brooks Dep. 68). Shortly thereafter, UC hired Gary Dent as Associate VP and Chief HR Officer in August of 2006 (Dent Dep. 131; Brooks Dep. 71-72 and Ex. 18). Dent, who is African-American, held this position until March of 2009 (Dent Dep. 131). The HR Department had experienced significant turnover, and Dent was expected to make improvements.[2] Dent indicates that during his hiring process, the Search Committee told him to focus on improving two problem areas: 1) the functioning of the HR Department; and, 2) service issues with UC Flex (Dent Dep. 22-23). Dent reorganized the HR department by combining three units with HR responsibilities (reporting to Guerin, Tucker and Young) into one department (Id.). Five individuals reported directly to Dent: Stephen Brooks (Dir. of Classification and Compensation), Chris Diersing (Dir. of HR Information Systems), Betty Young (Exec. Dir. of HR Service Center), Bill Johnson (Dir. of Labor Relations), and Corey Lehr (Dir. of Payroll) (Dent Dep. 24-25, 36-37 and Ex. 1).

Dent created a new position ("Assistant Vice President for Employee and Organization Effectiveness") reporting directly to him. Dent did not post the job opening and hired Debra Walton, who is African American, at a starting salary of $125,000. (Dent Dep. at 63-64). Brooks indicates that Dent did not seek any prior input from the Compensation Unit prior to offering Walton this salary (Brooks Dep. Exs. 30 and 39; Brooks Decl., Appx. A, ¶ 11). Brooks testified that he advised Dent of his concerns about the inappropriateness of this salary and its disparate impact

---

[2]In 2003, UC hired Jill Pollock as Chief HR Officer but she left after less than a year, and Guerin resumed as Interim Chief HR Officer (Guerin Dep. 11-12).

on other similar-level employees. Dent instructed him to compile a spreadsheet detailing the implications (Brooks Dep. 169; Brooks Dep. Ex. 31). Brooks did so, but Dent hired Walton at that salary anyway. This salary was substantially more than the salaries paid to other directors reporting to Dent, most of whom were Caucasian. According to Brooks, Dent indicated he would discuss this matter with him, but never did.

Brooks contends that Dent denied requests for similar pay increases for four Caucasian directors (including Brooks), as well as Pallavi Patel (an individual of unknown ethnic origin) (Brooks Dep. 198, 215-218, Ex. 39 at 9). Brooks also advised Dent that 90% of the misclassified employees were Caucasian, but Dent was dismissive of the issue, indicated it was a low priority, and did nothing to address it (Brooks Dep. 56, 91). Plaintiff further advised Dent that the excessive pay raise he wanted to give Theresa Murphy (African-American) in the HR Service Center was not justified under UC's established guidelines (Id. at 199 and Ex. 39 at No. 5). Brooks is quick to point out that he was even handed in his own salary recommendations for employees without regard to race and that he had previously recommended salary increases for various African-American employees.

On April 9, 2007, Brook's employment was terminated without prior warning and without cause (doc. no. 20-45, Letter). The termination letter cited "the current budget, customer feedback and assessment of the direction and leadership of the Total Compensation and Wellness Unit" (doc. no. 4 at ¶ 9). Brooks was replaced by an African-American employee, Keith Grace (Dent Dep. 117-119), who was given a

salary of $100,000.00, which was substantially higher (by $24,000.00) than Brooks' own salary for the same position (Dent Dep. Ex. 1). Brooks points out that Grace did not meet the express requirements for the job, as he lacked university experience.

On April 8, 2009, Brooks filed suit against Dent, UC, and unnamed "Doe" defendants, alleging reverse race discrimination in violation of 42 U.S.C. § 1981 against Gary Dent "and/or the Doe Defendants" (Count I); retaliation in violation of the First Amendment against Dent (Count II); reverse race discrimination in violation of Title VII against UC (Count III); and retaliation in violation of Title VII against UC (Count IV) (doc. no. 4, "First Amended Complaint").

After discovery concluded, the defendants moved on March 2, 2011 for summary judgment on all four counts of plaintiff's Amended Complaint, including his claims of reverse race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 and 42 U.S.C. § 1983.  Alternatively, defendant Dent argued that would also be entitled to qualified immunity for any § 1981 and § 1983 claims against him in his personal capacity.

## II.  Issues Presented

Brooks alleges disparate treatment based on his race arising from his termination on April 9, 2007.  Brooks alleges that he had voiced concerns to the Chief of HR Dent (who was African-American) that Dent was giving African-American employees substantially higher pay than their Caucasian colleagues for similar positions and that Dent was improperly ignoring various UC requirements, including the posting of jobs and proper classifications, in order to favor African-American

employees. Brooks claims he was then fired after raising concerns about these hiring practices and replaced with an African-American employee at a substantially higher salary.

For purposes of summary judgment, the Court must consider whether plaintiff has made a prima facie case of "reverse" race discrimination and/or retaliation, and if so, whether defendants have articulated non-discriminatory reasons for the termination of plaintiff's employment, and finally, whether plaintiff has sufficiently shown that the articulated reasons are a pretext for discrimination.

### III. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Amended Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).

**The Committee Notes explain that the "standard for granting summary judgment remain unchanged" and that amendment "will not affect continuing development of the decisional law construing and applying" the standard. Fed.R.Civ.P. 56, Committee Notes at 31. Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. <u>Id</u>. at 587. In reviewing a motion for summary judgment, a court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986).**

**IV.  Analysis**

**A. Plaintiff's First Amendment Retaliation Claim**

Defendants contend in their motion that plaintiff's First Amendment retaliation claim is without merit and should be dismissed. Plaintiff responds that he "does not contest defendants' motion regarding Count II of the First Amended Complaint" (doc. no. 32 at 2, fn. 1). Additionally, in plaintiff's highlighted version of the defendants' "Proposed Findings of Fact and Conclusions of Law," plaintiff does not dispute the defendants' assertion that "Brooks' First Amendment retaliation claim is . . . without merit" (doc. no. 34 at ¶ 18). Given that plaintiff concedes the lack of any genuine dispute regarding this claim, defendants are entitled to summary judgment in their favor on Count Two. Plaintiff's First Amendment retaliation claim

under § 1983 will be dismissed. Given the dismissal of this claim, Dent's argument that he his entitled to qualified immunity on the § 1983 claim need not be addressed.

**B.  Plaintiff's "Reverse" Race Discrimination Claims**

Plaintiff alleges his employment was terminated due to "reverse" race discrimination in violation of 42 U.S.C. § 1981 (Count One) and 42 U.S.C. § 2000e-2 (Count Three). As these claims have the same elements and are analyzed under the same allocations of the burden of proof, this Court need only conduct a single analysis. See Jackson v. Quanex Corp., 191 F.3d 647, 658 (6th Cir. 1999) (observing that § 1981 claims are reviewed "under the same standards as claims of race discrimination brought under Title VII");  Johnson v. University of Cincinnati, 215 F.3d 561, 573 fn. 5 (6th Cir. 1999) (same);  Gutzwiller v. Fenik, 860 F.2d 1317, 1325 (6th Cir. 1988) (same). Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1).

Plaintiff acknowledges that he does not have direct evidence of "reverse" race discrimination (doc. no. 34 at 11, ¶ 3; Brooks Dep. 238-241).[3]  When a plaintiff

---

[3] Although plaintiff refers to Betty Young's allegation that Dent reportedly wanted an all-African-American management team, "comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." Carter v. Univ. of Toledo, 349 F.3d 269, 273 (6th Cir. 2003). Moreover, the source of the comments is unidentified, and the comment would amount to hearsay, which may not be considered on summary judgment. Simpson v. Vanderbilt University, 359 Fed. Appx. 562, 569 (6th Cir. 2009) (Jacklyn v. Schering Plough, 176 F.3d 921, 927 (6th Cir. 1999)).

presents only indirect (circumstantial) evidence of disparate treatment based on race, the claim is analyzed under the burden-shifting approach of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), as refined by <u>Texas Dep't. of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981). Circumstantial evidence is evidence that "would allow an inference of discriminatory treatment." <u>White v. Columbus Metropolitan Housing Auth.</u>, 429 F.3d 232, 238 (6th Cir. 2005).

"The burden of establishing a prima facie case of disparate treatment is not onerous."  <u>Macy v. Hopkins County Sch. Bd. of Educ.</u>, 484 F.3d 357, 364 (6th Cir. 2007).  At the summary judgment stage, a plaintiff's burden is merely to present evidence upon which "a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." <u>Id</u>.

Typically, a plaintiff alleging racially discriminatory "disparate treatment" must show that he (1) was a member of a protected class; (2) was qualified for his position; 3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. <u>Newman v. Fed. Express Corp.</u>, 266 F.3d 401, 406 (6th Cir. 2001). In "reverse discrimination" cases, the first and fourth steps are modified.  At the first step,  plaintiff must show "background circumstances to support the allegation that the defendant is the unusual employer who discriminates against the majority." <u>Ledbetter v. Gilley</u>, 385 F.3d 683, 690 (6th Cir. 2004);  <u>Sutherland v. Michigan Dept. of Treasury</u>, 344 F.3d 603, 614 (6th Cir.

2003);  Zambetti v. Cuyahoga Community College, 314 F.3d 249, 255 (6th Cir. 2002).[4]

The fourth step has been stated in various ways, based on the context of the case. See Macy, 484 F.3d at 365 (observing that there are many "context-dependent ways by which plaintiffs may establish a prima facie case").  In a disparate treatment, employee discipline case, the Court of Appeals for the Sixth Circuit indicated that a plaintiff must show his employer "treated differently similarly situated employees of a different race."  Arendale v. City of Memphis, 519 F.3d 587, 603 (6th Cir. 2008); and see, Ledbetter, 385 F.3d at 690 (in a reverse discrimination failure to promote case, requiring plaintiff to show that the defendant "treated differently employees who were similarly situated but were not members of the protected class"); Sutherland, 344 F.3d at 614 (same).

"The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he . . . suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." Clay v. United Parcel Service, Inc., 501 F.3d 695, 703 (6th Cir. 2007) (citing Johnson v. Kroger Co., 319 F.3d 858, 866 (6th Cir. 2003)).

Defendants concede that Brooks was qualified (step two) and that he was terminated (step three), but argue that he has not established his case at steps one and four.  Defendants contend that plaintiff has offered no evidence of "background

---

[4]In Zambetti, the Court of Appeals for the Sixth Circuit cautioned against letting these modifications "impermissibly impose a heightened pleading standard on majority victims of discrimination." Id. at 257.

circumstances" and that he not shown that any African-American employees "similarly situated" to him were treated more favorably. Plaintiff disputes this (doc. no. 34 at 11, ¶ 5). He points out that after raising concerns about Dent's allegedly discriminatory actions, he was fired without warning and replaced by Keith Grace, an African-American employee, who was paid substantially more for the same job. See Zambetti, 314 F.3d at 256; and see, e.g., Morris v. Family Dollar Stores of Ohio, Inc., 320 Fed. Appx. 330, 340 (6th Cir. (Ohio)) (finding that plaintiff had provided requisite background circumstances by showing that his Hispanic supervisor terminated him and replaced him with Hispanic employee); Alexander v. Ohio State University, 697 F.Supp.2d 831, 843 (S.D.Ohio 2010)(finding that replacing an employee with a person of another race "may help to raise an inference of discrimination").

Plaintiff also points to various examples of favoritism in hiring and pay, such as Debra Walton and Theresa Murphy. Plaintiff's African-American supervisor (Dent) allegedly showed favoritism in pay and hiring towards African-Americans, including those at the director-level or higher, and plaintiff expressed concern that such pay disparities and the failure to post jobs were not proper under UC's established guidelines. Zambetti, 314 F.3d at 256 (prima facie case met where African-American police chief allegedly showed favoritism in hiring and promotion of African-American employees).

Although defendants contend that plaintiff has "waived" any claim for discriminatory pay (doc. no. 24 at 16, fn. 9), plaintiff contends that this pay disparity

is merely evidence of discrimination (doc. no. 32 at 10, fn. 4) and that he referred to this pay disparity in his EEOC charge and in his First Amended Complaint. Plaintiff essentially argues that employees at the same level were treated more favorably by Dent in terms of salary and hiring practices. While "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' ... the plaintiff and the employee with whom the plaintiff seeks to compare himself . . . must be similar in all of the relevant aspects." Ercegovich, 154 F.3d at 352.

Defendants identify the "similarly-situated" individual differently and point to a director-level employee (Betty Young) who was also terminated. Defendants contend that because this African-American director was also fired (and replaced with another African-American director), plaintiff cannot show that similarly-situated employees were not treated differently. However, Betty Young had not confronted her supervisor about allegedly discriminatory hiring practices. Plaintiff has sufficiently established a prima facie case.

The burden of production then shifts to the defendants to articulate a legitimate, nondiscriminatory reason for terminating plaintiff's employment. Burdine, 450 U.S. at 253; McDonnell Douglas, 411 U.S. at 802. Dent's termination letter to Brooks cited "the current budget, customer feedback and assessment of the direction and leadership of the Total Compensation and Wellness Unit" (doc. no. 4 at ¶ 9). Although these reasons are rather vague, defendants are deemed to have sufficiently articulated non-discriminatory reasons for Brooks' termination. The

burden of production then shifts back to plaintiff to demonstrate that defendants' stated reasons are merely a pretext for unlawful discrimination. To show pretext, plaintiff must show that the proffered reasons for his removal: (1) had no basis in fact; (2) did not actually motivate the challenged conduct; or (3) were insufficient to explain the challenged action. <u>Chen v. Dow Chem. Co.</u>, 580 F.3d 394, 400 (6th Cir. 2009); <u>Imwalle</u>, 515 F.3d at 545.

Plaintiff points out that citing "the current budget" as a reason for his termination makes little sense when his less-qualified replacement was given an even higher salary. Although Dent now indicates that the Provost and others wanted a "market-based" approach (Dent Dep. 49-50), plaintiff counters that he was quite familiar with and was already extensively using a market-based approach for which his department had received an award, and that this purported criticism is factually baseless.

"As long as an employer has an honest belief in its proffered nondiscriminatory reason, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." <u>Majewski v. Auto. Data Processing, Inc.</u>, 274 F.3d 1106, 1117 (6th Cir. 2001). However, a decision to terminate an employee based upon unlawful considerations does not become legitimate because it is characterized as a business decision. <u>E.E.O.C. v. Yenkin-Majestic Paint Corp.</u>, 112 F.3d 831, 835 (6th Cir. 1997). "The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is race." <u>Alexander</u>, 697 F.Supp.2d at 843 (citing <u>Carson v.</u>

Bethlehem Steel Corp., 82 F.3d 157 (7th Cir. 1996).

Although defendants also gave "customer feedback and assessment of the direction and leadership of the Total Compensation and Wellness Unit" as reasons for termination, plaintiff points out that Dent never notified him of any alleged complaints or any performance problems. Although defendants now contend that shortcomings in implementation of UC Flex were the reason, an employer's shifting explanations for terminating an employee may support an inference of pretext. See, e.g., Alexander, 697 F.Supp.2d at 844. Although Dent contends he received numerous complaints about Brooks' participation in UC Flex, none of those alleged complaints are documented in writing. Plaintiff's termination also occurred shortly after he expressed his concerns to Dent about Dent's practices. Given that plaintiff otherwise had a long successful record as Director of Compensation, a jury could reasonably doubt the defendants' explanations based on the evidence presently before the Court. See Chen, 580 F.3d at 400, n. 4. Although it is a close issue, plaintiff has pointed to sufficient evidence (and permissible inferences) to withstand summary judgment.

C. Plaintiff's Retaliation Claim Under Title VII

Section § 2000e-3(a) provides in relevant part that: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

subchapter." 42 U.S.C. § 2000e-3(a).  In Count Four of his Amended Complaint, plaintiff alleges that the defendants discriminated against him because he "objected to Dent's attempts to avoid posting and hiring requirements in order to favor African American employees and/or candidates" (doc. no. 4 at ¶ 8).

Absent direct evidence of unlawful retaliation, plaintiff may establish a prima facie case with circumstantial evidence. Abbott v. Crown Motor Co., Inc., 348 F.3d 537, 542 (6th Cir. 2003) (citing Swierkiewicz v. Sorema, 534 U.S. 506, 511 (2002). A prima facie case of retaliation requires a plaintiff to show that: 1) he engaged in protected activity; 2) that defendant knew of this protected activity; 3) that defendant then took an adverse employment action against plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action.  Hunter v. Sec'y of U.A. Army, 565 F.3d 986, 996 (6th Cir. 2009) (quoting Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000)). The evidence must be "sufficient to raise an inference that the protected activity was the likely reason for the adverse action." Wade v. Knoxville Utils. Bd., 259 F.3d 452, 463 (6th Cir. 2001); Walborn v. Erie County Care Facility, 150 F.3d 584, 589 (6th Cir.1998).

A plaintiff may show that he engaged in protected activity either by: (1) opposing an unlawful practice under Title VII; or (2) participating in an investigation, proceeding or hearing under Title VII. See 42 U.S.C. §2000e-3(a).  Brooks is proceeding under the "opposition" prong.  Protected activity is broadly construed and includes "opposing any practice that the employee reasonably believes to be a

violation of Title VII .... whether or not the challenged practice ultimately is found to be unlawful." Johnson v. Univ. of Cincinnati, 215 F.3d 561, 571, 579-80 (6th Cir. 2000). "Under Title VII, an employee is protected against employer retaliation for opposing any practice that the employee reasonably believes to be a violation of Title VII." Id. The Court of Appeals for the Sixth Circuit has interpreted "protected activity" broadly to include "complain[ts] to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices." Id.; and see, e.g., Simpson v. Vanderbilt University, 359 Fed.Appx. 562, 571 (6th Cir. (Tenn.) 2009) (finding that informal complaints could constitute protected activity under Title VII).

Brooks found himself in the unenviable position of advising his own supervisor, the Chief of the HR Department, that he believed some of the supervisor's practices were discriminatory. As already discussed, he expressed his concerns about an excessive starting salary level of $125,000.00 for Debra Walton (who is African-American). Brooks prepared a spreadsheet of comparative salary information for Dent that showed a significant pay disparity between the other five directors (four of whom were Caucasian) and Ms. Walton. The record contains a letter that Brooks sent to Dent on December 6, 2006, reflecting this "salary exception" for Debra Walton and indicating it was "per your request" (doc. no. 20-40 at 1, Defendant's Ex. 30). He also expressed concern about Dent's decision not to post this high level job. See, e.g., Johnson, 215 F.3d at 581 ("one example of defendants' discriminatory hiring practice which plaintiff opposed was defendants' decision not to advertise for the Vice-Chairman position"). Plaintiff was not merely

contesting a single hiring decision, rather he had expressed concerns about a course of discriminatory hiring conduct.

To show a causal connection between the protected activity and termination, plaintiff must point to evidence from which a permissible inference can be drawn that he would not have been fired had he not engaged in the protected activity. See Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). Causation may be inferred from circumstantial evidence, including "evidence that [the] defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights." Id. Brooks was fired shortly after expressing his concerns about his immediate supervisor's actions that Books believed were discriminatory. The evidence of causation must be "sufficient to raise the inference that [the plaintiff's] protected activity was the likely reason for the adverse action." Zanders v. Nat'l R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir. 1990). Certainly, the temporal proximity between the opposition and the termination supports an inference of retaliation here. Defendants' vague and shifting reasons for plaintiff's termination also support this inference.

D. Title VII, Individual Capacity

Title VII defines "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person . . . ." 42 U.S.C. § 2000e. Plaintiff does not argue that the individual supervisor Gary Dent qualifies as an "employer." It is well-settled that a supervisor who does not otherwise qualify as an "employer" may not be held individually liable under Title VII.

Wathen v. General Electric Co., 115 F.3d 400, 405 (6th Cir. 1997). Congress did not intend for individuals to face liability under Title VII. Id. at 406. However, a plaintiff may bring Title VII claims for equitable relief against an individual defendant in his "official capacity," which is essentially a lawsuit against the governmental agency itself. Johnson, 215 F.3d at 571; Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 68 (1989)).

### E. Qualified Immunity

Lastly, Dent asserts that he is entitled to qualified immunity for the § 1981 claim against him in his individual capacity. A defendant is entitled to qualified immunity unless: (1) the defendant violated a constitutional right; and (2) the right was clearly established. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 815–16 (2009). The Court may consider the circumstances of the case and use its discretion to decide which prong to address first. Id. at 818. Defendants readily acknowledge that they "are fully aware that members of a racial majority group may bring a claim of reverse discrimination pursuant to § 1981" (doc. no. 35 at 19). Plaintiff points out that no reasonable official could have believed that in 2007 it was permissible to discriminate on the basis of race without running afoul of § 1981 (doc. no. 32 at 3). The facts alleged would establish such a violation. See McDonald v. Sante Fe Trail Transportation Co., 427 U.S. 273, 287-96 (1976) (Title VII prohibit racial discrimination in private employment against white persons as well as against nonwhites).

### V. Conclusion

Count Two (the 1983 claim for First Amendment retaliation) is not disputed

and is subject to dismissal. With respect to plaintiff's claims of reverse race discrimination and retaliation in Counts One, Three, and Four, plaintiff has made a prima facie case. Although defendants have stated non-discriminatory reasons for Brooks' termination, plaintiff has sufficiently shown, for purposes of withstanding summary judgment, that these reasons were pretextual.

Accordingly, the defendants' "Motion for Summary Judgment" (doc. no. 24) is DENIED, except as to Count Two, which is dismissed with prejudice; this case shall proceed to trial as scheduled.

IT IS SO ORDERED.

      /Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court